**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**



FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 SEP 30 PM 1: 14

JEFFREY P. COLWELL
CLERK

BY_____DEP CLK

THE ESTATE OF JOYCE E.
AMERSON, **Galen Amerson Personal
Representative, and Does 1-5**

Plaintiff,

    vs.

**BLACK HILLS FEDERAL CREDIT
UNION**

**& Roger Heacock, Personally and as
President of and for BLACK HILLS
FEDERAL CREDIT UNION and Does
5-15**

Defendant(s)

Case # _____

**'19 ⬛ CV - 02795**

**Declaratory Judgment, and** **.5**

**Actual and Punitive Damages**

**Demand for Jury Trial**

Date: September 30, 2019

## COMPLAINT

## <u>PARTIES</u>

· **Plaintiffs:**

1) The Estate of Joyce E. Amerson; c/o Galen Amerson, Personal Representative,

1740 Dell Range Blvd, Suite H - 474; Cheyenne, WY 82009,

    **Defendants:**

1)  BLACK HILLS FEDERAL CREDIT UNION;  225 Main Street;  Rapid City,

South Dakota  57701

2)  Roger Heacock;  Personally and as President of BLACK HILLS FEDERAL

CREDIT UNION, 225 Main Street;  Rapid City, South Dakota  57701

## STANDARD OF REVIEW

### PRELIMINARY STATEMENT

The Court should consider the pleadings by "less stringent standards",

*Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); the

Court should work to assure that any ignorance of law or procedure does not result

in an unjust decision; and should not penalize good-faith errors.

Implicit in the right of self-representation is an obligation on the part of any

court to make reasonable allowances to protect *unrepresented litigants* from

inadvertent forfeiture of important Rights because of any lack of formal legal

training. See Traguth v. Zuck, 710 F.2d 90, 95 (2nd Cir. 1983); Hoffman v. U.S.,

244 F.2d 378, 379 (9th Cir. 1957); Darr v. Burford, 339 U.S. 200 (1950).

## JURISDICTION

Plaintiff files this case under 42 U.S.C. § 1983 and other state and federal

laws, and jurisdiction exists pursuant to 28 U.S. C. § 1331.  Venue is appropriate in

this District, as Plaintiff was at all times relevant to this action, a citizen of the

State of Colorado.  Joyce E. Amerson, who's Estate is the subject of this action was

a citizen of the State of South Dakota until July 2014, when she moved to the State

of Colorado. Joyce E. Amerson, passed away in El Paso County, Colorado, and

her Will was probated in El Paso County, Colorado, where Plaintiff was appointed

Personal Representative.

## CASE IS TIMELY

This action is being filed in a timely manner, as the State of South Dakota's

Codified laws state a seven (7) year statute of limitations for civil financial abuses.

## COMPLAINT

1. The entire Amerson family, Glenn, Joyce, Steven and Galen, had accounts
   continuously with Defendant BLACK HILLS FEDERAL CREDIT UNION,
   at least since the early 1990's .

2. Glenn and Joyce Amerson, being of sound mind and body each executed
   Last Wills and Testament(s) on August 13, 1981.

3. Joyce Amerson's Last Will and Testament dated August 13, 1981 named her
   husband Glenn Amerson as Executor, and in the event Glenn pre-deceased
   her, then her son Galen Amerson was to be her as Executor.

4. Prior to leukemia claiming Glenn Amerson's life in 1992, he and Joyce set
   up investment accounts and insurance policies for long term care and income
   production to assure all of Joyce's needs would be provided for in the
   lifestyle she had come to expect, including medical needs.

5. Glenn Amerson, passed away in January 1992, leaving his interest in all his financial accounts with the Defendant, and others, to his widow, Joyce E. Amerson.

6. After Glenn's death, Joyce E. Amerson became the recipient of Social Security Survivors benefits, and other financial investments and retirement benefits, which she maintained in a separate account(s) with the Defendant for direct deposits.

7. After the death of Glenn Amerson, in 1992, Joyce Amerson, planning for her own end of life needs, added Galen Amerson in 1993 to her:

   a) Black Hills Federal Credit Union accounts, as co-signer (Joyce Amerson or Galen Amerson)

   b) Black Hills Federal Credit Union safety deposit box, as co-signer (Joyce Amerson or Galen Amerson)

   c) Investment accounts with Charles Arbeiter as able to direct her assets.

   d) July 28, 1993, Joyce changed the title to her trailer home from Joyce Amerson to Joyce Amerson or Galen Amerson, (joint ownership)

8. Steven Amerson, the eldest son, was well known in the community as an active alcoholic most of his life. Joyce provided for him out of love and kindness, because he was unable to sustain employment, but Joyce never entrusted her assets, or even the knowledge of her assets to Steven.

9. One evening in approximately 2002, Steven Amerson, consumed so much alcohol, that he fell from the roof of his trailer house, nearly died, and sustained significant brain damage, after which Steven required a Guardian to manage his affairs. Joyce Amerson, his mother, became Steven's guardian, until his death on July 5, 2013. Defendant assisted Joyce and Steven Amerson to set up the necessary bank accounts for direct deposit from Social Security, with Joyce acting as Steven's "agent" for the funds.

10. June 29, 2011, Joyce Amerson, being of sound mind, further set up for her end of life needs, signed the paperwork making Galen Amerson her Durable Power of Attorney and Healthcare Power of Attorney. The paperwork was notarized and witnessed by two (2) people also of sound mind.

11. February 12, 2012, approximately, Joyce fell on the ice on the steps of her front porch and was unable to get up. A relative was passing by and found Joyce and took her to the Rapid City Regional Emergency Room. After receiving treatment for the fall, Joyce was released to Meadowbrook Assisted Living for rehabilitation, where it was observed, by her physician Dr. Goodhope DO that Joyce was showing signs of memory loss to give concern for her continuing to live alone.

12. March 26, 2012, Joyce Amerson's primary care doctor, Dr. Goodhope DO, wrote a letter and submitted it to Meadowbrook Assisted Living, stating

Joyce was no longer able to manage her affairs, and that her son Galen

Amerson as Durable Power of Attorney should take over her day to day

financial affairs, as well as her healthcare decisions.

13. March 28, 2012, Galen Amerson, Durable Power of Attorney as granted by

Joyce E. Amerson, arranged and completed the necessary paperwork and

notarized signatures for Defendant BLACK HILLS FEDERAL CREDIT

UNION, to set up his POA for Joyce with Defendant.  Defendant sent a

notary to Meadowbrook Assisted Living to manage all the paperwork and

assure it was all legal and proper for Defendants purposes, to allow Galen

Amerson to manage Joyce Amerson's accounts and assets.

14. July 25, 2012, Joyce fell at Meadowbrook Assisted Living and among other

injuries, broke one of her femurs, which required surgery and rehabilitation

to recover from, during that time, it was agreed that Joyce could not leave

Meadowbrook Assisted Living unless her physician, Dr. Goodhope  D.O.

gave permission as Joyce's break healed.

15. September 20, 2012, Steven Amerson and his common law wife Rita

Breeze, went to Meadowbrook Assisted Living, asked the staff to turn off

her alarm bracelet, and took Joyce E. Amerson from Golden Living

Meadowbrook Assisted Living without the approval of Joyce's primary care

doctor, Dr. Michael Goodhope DO.

16. September 30, 2012 Steven Amerson and Rita Breese dialed Meadowbrook Assisted Living, then handed the phone to Joyce and coached her to tell them she was not returning, as the Golden Living Meadowbrook staff listened.

17. On September 30, 2012, Joyce was no longer mentally capable of understanding what was actually going on, due to her dementia, so it was relatively easy to fill her head with thoughts and ideas that were not true.

18. Everyone in any facility desires to return home, and never really considers any facility "home," so Steven's promise of being able to go "home" was enough to lure Joyce into a situation where was she was endangered, not well cared for, and not able to help herself or get help.

19. On September 30, 2012 after learning Joyce had been removed from Golden Living Meadowbrook Assisted Living by Steven Amerson and Rita Breese, Galen Amerson, Durable Power of Attorney, wrote and faxed a letter explaining what had happened to Black Hills Federal Credit Union and explained the danger Galen felt Joyce's bank accounts were in.

20. Galen Amerson DPOA had reason to expect and fully expected Steven Amerson and Rita Breese to take Joyce E. Amerson to Black Hills Federal Credit Union on Monday October 1, 2012, or soon thereafter, to take all or most of Joyce's money from her accounts with the Defendant, as people

close to Joyce and Joyce's granddaughter, Steven's daughter, were witnesses
to Steven bragging about how rich he was going to be when his mother died,
and Steven was even showing people the new pick-up truck he was going to
buy with the money.

21. Galen Amerson DPOA further explained in this communications to the
Defendant that his mother Joyce Amerson was brought in to remove money,
that she would be completely confused about what was happening, which
indeed was the case the afternoon of October 1, 2012.

22. September 30, 2012, Galen requested, as DPOA, by fax and email, that all
Joyce E. Amerson's accounts be immediately frozen to protect the accounts
and Joyce from being financially exploited.  Defendant allegedly ignored the
urgent requests and left Joyce Amerson's hard earned money at risk.

23. On the morning of October 1, 2012, Galen Amerson POA called Defendant
Black Hills Federal Credit Union twice to follow up on the fax and email
sent Sunday September 30, 2012, and to assure they knew the danger and
froze Joyce's accounts to stop any theft or exploitation.

24. October 1, 2012, Joyce Amerson's primary care physician also wrote a letter
stating that Joyce needed round the clock care and she should return to
Golden Living Meadowbrook Assisted Living for her own safety.

25. On the afternoon of October 1, 2012, Steven Amerson and Rita Breese took Joyce E. Amerson to Defendant's location to close her accounts by having Joyce E. Amerson autograph a hand written revocation of "Power of Attorney of Gaylen Amerson," (name is misspelled, hence invalid) which lacked a notary and lacked witnesses and further was invalid as Joyce Amerson lacked testamentary capacity to sign any agreement.

26. On the afternoon of October 1, 2012, Galen Amerson was told verbally by an employee of the Defendant, that his affidavit of power of attorney, filed with Defendant BLACK HILLS FEDERAL CREDIT UNION, following all the Credit Unions requirements, dated March 28, 2012 was revoked, no evidence was given.

27. On the afternoon of October 1, 2012, Joyce E. Amerson was incapable of executing any legal document, including changing her DPOA, or the POA for Galen Amerson with the Defendant, as of March 26, 2012 due to her dementia.

28. Joyce Amerson never regained her mental capacity.

29. October 1, 2012, all of Joyce Amerson's accounts were closed and an estimated over $60,000 was removed into the possession of Steven Amerson.  Further a portion of Joyce Amerson's social Security benefits

were deliberately set up by Defendant to direct deposit to Steven Amerson
by Defendants.

30. Steven Amerson then opened new accounts allegedly for himself and Joyce
Amerson for which he was a signatory, with Defendant.

31. The actions of Steven Amerson makes the inaction of the Defendant once
the error was discovered, even more egregious, as it would have been very
easy to recover Joyce's money the same afternoon, and appropriately, call
the Rapid City Police to intervene.

32. Instead, Defendant chose to cover up their mistake, which exposed Joyce
Amerson's approximately $300,000 in investment, and exposed Joyce
Amerson, who was frail and confused, to Court hearings, and sub-standard
care for the remainder of her life, at her own financial, physical and mental
expense.

33. Proof of Steven's theft from Joyce Amerson, with the complete cooperation
of Defendants in the form of a bank statement from Defendant dated July 31,
2013, was given to Galen Amerson after Steven Amerson's death, July 5,
2013, in August 2013, showing a balance of over $30,000, and Social
Security, a direct deposit of $1,134 each month.  Steven Amerson, couldn't
hold a job for over two (2) decades, and never in his whole life ever had
more than his own VA Benefits check of $1,236/month, which was direct

deposited and spent every month, suddenly had over $30,000 and a monthly

Social Security direct deposit all done by Defendants, at Joyce Amerson's

expense, without questioning the fact that the Social Security was a death

benefit, and Steven was not entitled to receive his Mother's income.

34. The July 31, 2013 statement showed a monthly direct deposit from Social

Security of $1,134, which was Joyce Amerson's widows benefits from her

husband Glenn.  Steven received not only the accumulated death benefits

Joyce had in an account on October 1, 2012 when Steven was assisted by

Defendant BLACK HILLS FEDERAL CREDIT UNION, to commit

multiple bank frauds and theft, by first overriding Joyce's DPOA and other

POA protections to close Joyce's accounts, second Defendant gave all of

Joyce's money to Steven, and then set up for Steven an account to receive

Joyce Amerson Social Security spousal benefits. During the last ten (10)

months of Steven's life, he received, in fraud, a total of $11,340 in direct

deposits which were rightfully Joyce's.

35. Joyce Amerson NEVER received any Social Security benefits from her

husband Glenn Amerson after October 2012 – and the over $30,00 estimated

accumulated benefits were all knowingly given by Defendants to Steven

Amerson, therefore it is alleged after the death of Steven Amerson in July

2013, Jeramie Amerson, Steven's son, knowingly took Joyce Amerson's

Social Security from his grandfather Glenn, from his father's account, set up by Defendants, to the end of Joyce's life on January 6, 2016, in addition to the $30,102 in the account at the time of his father Steven's death, an additional 30 months, six (6) days, $34,246.80, from Social Security his grandmother, all with the necessary assistance of Defendants.

36. As a result of Joyce's accounts, and Joyce not being property protected from financial exploitation, with Defendants full knowledge that Joyce Amerson was and had been for months, not able to understand her circumstances, her finances, or to recognize the predatory actions of her eldest son Steven, Defendants essentially assisted Steven Amerson to steal, and divert Joyce Amerson assets to hire an attorney and fight Joyce's designated DPOA, at great expense, including all $300,000 of her investments, to Joyce and her remaining three and a half years of life,

37. Plaintiff made attempts to have Defendant BLACK HILLS FEDERAL CREDIT UNION correct the error in the days and months after October 1, 2012, without success.

38. Joyce stayed at her home, without medical attention and with very limited interaction with others. Caretakers, hired by Steven Amerson and Rita Breeze, sat with Joyce three times a week and fed her pancakes and mashed potatoes.  Joyce was treated harshly at best, by both the caretakers and Rita,

if their own hand written notes are to be believed, between October 1, 2012 and December 31, 2012.

39. December 31, 2012, Joyce Amerson had a massive stroke which hit the right side of her body.  She lost her ability to speak clearly, and the use of her right hand, which was her dominate hand, and was deemed to need skilled nursing from that time forward, for the rest of her life, as she was unable to walk, feed herself without supervision to prevent choking, and she was not able to take care of her personal hygiene.

40. The last three and a half years of Joyce Amerson life became an actual inescapable nightmare as a result of Defendant BLACK HILLS FEDERAL CREDIT UNION's inexcusable, error, as strangers more intent on billing Joyce for to line their pockets, held Joyce against her will and away from Galen her only immediate family after Steven Amerson died in 2013.

41. Worse, Defendants assisted with the lootings of Joyce Amerson by defaming Galen Amerson DPOA, allegedly to cover for Defendants initiation of the entire situation.

42. July 2014, Joyce was moved to Colorado by Galen, who was still her Durable Power of Attorney, where she thrived and healed and was happy in spite of her massive stroke.

43. February 2015, Joyce Amerson was moved from Skilled Nursing, which Joyce required as noted by multiple doctors, by a court appointed Guardian, whom Joyce loathed, and who was mean to Joyce as witnessed by nurses and staff of LifeCare of Evergreen in Colorado, in a major snowstorm, , to MorningStar Assisted Living in Colorado Springs, further away from Galen Amerson her only immediate family, where she did not receive the medical care she required.

44. From February 2015 to her death January 2016, Plaintiff was not able to be with his mother alone, nor was he informed of her needs or her suffering.

45. Plaintiff documented Joyce's physical decline at the hands of a hired Guardian, on his cell phone.

46. Joyce Amerson was moved from one MorningStar to another in Colorado Springs, allegedly to keep the hospital from reporting Joyce's needs exceeding the capabilities of MorningStar, when Joyce required multiple trips to emergency rooms.

47. Joyce Amerson passed away of an antibiotic resistant infection on January 6, 2016, without her son Galen being informed she was even sick.

48. Joyce while not able to manage her life and finances was very aware her money was being taken and used against her.

49. Joyce's wishes to the end of her life were for Galen Amerson, her son and DPOA, to "get my money back."

50. But for the actions, inactions and necessary assistance of Defendant BLACK HILLS FEDERAL CREDIT UNION, to give over all her assets in the care of Defendants, to Steven Amerson, in opposition of Joyce Amerson's stated wishes when she was of sound mind, on October 1, 2012, Joyce Amerson's last three and a half years would have been spent privately with her family, including her son Galen, and her estate intact.

51. Plaintiff has made multiple attempts to get full audits of all the accounts to verify the estate from Defendants BLACK HILLS FEDERAL CREDIT UNION and Roger Heacock, in an effort to exhaust all administrative remedies, for over a year, without success.

52. Plaintiff's Personal Representative has reason to believe and believes that Defendants are deliberately withholding the truth from him, and the Estate of Joyce E. Amerson, making it impossible for him to accurately assess what was taken from the Plaintiff.

## FIRST CAUSE OF ACTION

### Financial Exploitation of an Elder

53. Plaintiff restates paragraphs 1 through 52.

54. Joyce Amerson and her Estate were exploited beginning October 1, 2012.

55. These actions are the direct result of Defendant BLACK HILLS FEDERAL CREDIT UNION staff, including Defendant Heacock not acting in accordance with the Power of Attorney and documents stating Joyce was unable to understand her circumstances due to her mental decline and then not immediately correcting Defendants error.

56. Plaintiff alleges Defendants violated Joyce Amerson's civil rights under 42 USC § 1983 as well as SDCL § 22-46-1(1)(4)(3) through SDCL §22-46-1, by neglecting to protect Joyce who was 85 years old on October 1, 2012.

57. Plaintiff alleges Defendants should have contacted law enforcement and did not.

## SECOND CAUSE OF ACTION

## Known Violation of Power of Attorney & Alleged Assistance to Commit theft, and Social Security Fraud

58. Plaintiff restates paragraphs 1 through 57.

59. Defendant knew or should have known Joyce Amerson was, in 2012, frail in body and not in her sound mind, as Plaintiff had established not only a Durable power of Attorney with Joyce Amerson, but also with the Defendant, following all the Defendants' requirements.

60. Plaintiff had a numerous conversations with long time employees of the Defendant who knew the Plaintiff and his mother Joyce, and Joyce's mental

decline, as well as the regular visits of Steven Amerson with Joyce to get

Joyce to cash ever higher checks for him, as Joyce's mind slipped into

complete confusion.

61. Plaintiff did all he could to notify and warn Defendant and employees

BLACK HILLS FEDERAL CREDIT UNION, of what he strongly

suspected was going to happen on October 1, 2012, or soon thereafter.

62. Defendant, despite at least four (4) communications from Plaintiff between

September 30, 2012 and the morning of October 1, 2012, telling Defendant

to "freeze" all Joyce's accounts, failed to do so, and thereby put Joyce

Amerson in financial, physical and mental danger and peril.

63. Defendants not only failed to freeze Joyce's accounts at the multiple

messages insisting that the accounts be frozen to protect Joyce's assets, but

Defendant's terminated Joyce's legal, self-executed, Durable Power of

Attorney as well as the resulting Power of Attorney, Defendants notarized

and had Plaintiff provide witnesses to get, and gave the very person who

endangered Joyce physically, all her money, which was then used against

her for the rest of her life.

64. Plaintiff alleges by creating an alleged new Power of Attorney for Joyce,

which was used to her detriment after her stroke, Defendant created a false

document, and violated Joyce Amerson's civil rights under 42 USC § 1983,

SDCL §22-12A-16.

65. Plaintiff alleges Defendant's cooperation was essential to the exploitation of

and complete theft of Joyce Amerson's assets held by Defendants.

66. Plaintiff alleged Defendants knew or should have known that diverting

Social Security benefits from Joyce Amerson, to Steven Amerson was fraud

and theft.

### THIRD CAUSE OF ACTION

### Elder Abuse, Leading to Neglect and Death

67. Plaintiff restates paragraphs 1 through 66.

68. Plaintiff alleges that Defendants knew or should have known their actions

not only failed to protect Joyce Amerson, who was a disabled elder, assets

and income, from financial exploitation, but that Defendant cooperated and

conspired to cover their failures and then committed alleged fraud, which

violated their fiduciary duty(s) to Joyce and her will for how and who should

mange her assets, and how her medical and physical care would be handled,

not by strangers intent of living their own pockets, but by loving family who

knew Joyce and her wishes.

69. Joyce's self-appointed, Durable Power of Attorney, and Healthcare Power

of Attorney, and finally the Plaintiff, and Personal Representative were

prohibited by her exploitative abusers from accessing her money to stand in her defense, and have Joyce's wishes fulfilled and provided for Joyce's care at the level of her need.

70. Joyce Amerson was threatened by three attorneys in South Dakota who visited her at Fountain Springs Nursing Home, and told her she could never leave (South Dakota) and to be close to her son, Plaintiff. After July 2014, the three abusers called Joyce on the phone at LifeCare of Evergreen, and continued to abuse and upset her.

71. Plaintiff retains all rights including the right to amend this complaint, and to add Parties to the case if necessary.

## **PRAYERS FOR REMEDIES**

72. Plaintiff prays this court issue a declaratory judgment regarding the known and deliberate diverting of Plaintiff's Social Security savings and income from her deceased spouse to the end of her life to Steven Amerson, and later his son, her grandson Jeramie Amerson.

73. Plaintiff prays this court will allow discovery and due process proceed in this matter, to allow Plaintiff to verify the assets of the Estate of Joyce Amerson to be established.

74. Plaintiffs pray that this court will grant financial compensation commensurate with pain and suffering caused by Defendants failures to

prevent and reverse the financial exploitation and mental and physical

abuses Joyce Amerson, and her Estate sustained.

75. Plaintiffs pray that this court will grant financial compensation

commensurate with the losses suffered as a result the violations of her civil

right to have her chosen Power of Attorney disregarding without following

lawful procedures, and the loss of all her money to strangers who never

should have been in her life.

76. And any other damage this court feels is appropriate.


Submitted this 30th day of September, in the year of our Lord 2019

Respectfully,


THE ESTATE OF JOYCE E. AMERSON
**By Galen L. Amerson**, living, All rights reserved,
without prejudice, as Personal Representative
1740 Dell Range Blvd.; Suite H - #474
Cheyenne, WY  82009
303-513-8104
gamerso@icloud.com

# CERTIFICATE OF SERVICE

I, Galen Amerson, Personal Representative for THE ESTATE OF JOYCE E. AMERSON, pursuant to 28 U.S.C. § 1446, do swear and affirm that we have process served a signed copy of this Complaint as soon after September 30, 2019, as is possible.

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF COLORADO<br>**Alfred A. Arraj Courthouse**<br>901 19th Street<br>Denver, CO 80294 | In Person |
| BLACK HILLS FEDERAL CREDIT UNION<br>225 Main Street<br>Rapid City, SD  57701 | Process Service |
| Roger Heacock, President<br>c/o BLACK HILLS FEDERAL CREDIT UNION<br>225 Main Street<br>Rapid City, SD  57701 | Process Service |

Respectfully,

THE ESTATE OF JOYCE E. AMERSON
**By Galen L. Amerson**, living, All rights reserved,
without prejudice, as Personal Representative
1740 Dell Range Blvd.; Suite H - #474
Cheyenne, WY  82009
303-513-8104
gamerso@icloud.com

JS 44 (Rev 11/15) District of Colorado Form

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM )*

## I. (a) PLAINTIFFS
The Estate of Joyce E. Amerson

**(b)** County of Residence of First Listed Plaintiff   Jefferson & El Paso
*(EXCEPT IN U S PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se;  1740 Dell Range Blvd; Suite H-474
Cheyenne, WY 82009

## DEFENDANTS
BLACK HILLS FEDERAL CREDIT UNION & Roger Heacock

County of Residence of First Listed Defendant   Pennington, South Dakota
*(IN U S PLAINTIFF CASES ONLY)*
NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U S Government Plaintiff
- ☐ 2  U S Government Defendant
- ☐ 3  Federal Question *(U S Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☒ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983 & others; S.D. Codified Laws §§ 22-46-1 through 28-1-44; C.R.S. 26-3.1-101; C R.S. 26-3.1-1
Brief description of cause:
Violation of POA failure to protect & Elder Financial & Abuse    AP Docket

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P   DEMAND $   CHECK YES only if demanded in complaint   JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*   JUDGE   DOCKET NUMBER

DATE 09/30/2019   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG JUDGE